IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Carlos F. Torres,<br><br>Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>Defendant. | Civil Action No. 2:10-cv-2489-RMG<br><br>ORDER |

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain relief from the final decision of the Commissioner of the Social Security Administration denying him disability insurance benefits under the Social Security Act. In accord with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to a United States Magistrate Judge for pretrial handling. The Magistrate Judge issued a Report and Recommendation dated December 16, 2011, recommending that the decision of the Commissioner be reversed and remanded. (Dkt. No. 29). The Defendant objected to the Report and Recommendation and urged this Court to affirm the decision of the Commissioner. (Dkt. No. 30). After a careful review of the record, the decision of the Administrative Law Judge ("ALJ") and the applicable legal standards, the Court reverses the decision of the Commissioner and remands the matter for further action consistent with this Order.

## Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which a specific objection is made, and may accept, reject or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme of the Social Security Act is a limited one. Section 205(g) of the Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of factual circumstances that substitutes the Court's findings for those of the Commissioner. *See Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is limited, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a solid foundation for the [Commissioner's] findings." *Vitek*, 438 F.2d at 1157-58. Moreover, "[w]e cannot determine if findings are unsupported by substantial evidence unless the [Commissioner] explicitly indicates the weight given to all of the relevant evidence." *Gordon v. Schweiker*, 725

F.2d 231, 235 (4th Cir. 1984). This requires the Commissioner "to indicate explicitly the weight accorded to the various medical reports in the record." *Id.* at 236; *see also, DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("The Secretary must present us with findings and determinations sufficiently articulated to permit meaningful judicial review.").

## Discussion

Plaintiff, then 39 years of age, applied for disability insurance benefits beginning on July 15, 2005 on the basis that he had a variety of impairments and conditions, including significant spinal pathology which required major cervical spine surgery on January 26, 2006. Following Plaintiff's surgery, he continued to complain of a variety of symptoms consistent with spinal cord pathology, including pain, numbness, "sensation of pins and needles" and some weakness of the upper extremities. Record (hereafter "R.") at 260, 261, 323. He also complained that his pain and other symptoms worsened as the day progressed. *Id.*

The ALJ found that Plaintiff was disabled from the onset date of July 15, 2005 through July 23, 2007. R. at 16. In reaching that conclusion, the ALJ indicated that he gave "great weight" to the examination of a consulting examining physician, Dr. Charles Thomas. *Id.* Dr. Thomas examined Plaintiff on July 23, 2007, and, as the ALJ noted, Dr. Thomas' "exam . . . revealed a reduced range of motion in the cervical spine and the claimant reported increased pain in the neck and left shoulder as the day went on, a sensation of pins and needles in the left upper extremity, and tenderness to the palpation of the neck." *Id.* The ALJ also found support for his finding of disability from the records of two of Plaintiff's treating physicians, Drs. Koziol and Szapiel. *Id.* The ALJ concluded that based upon the record available, "there were no jobs that existed in significant numbers in the national economy that the claimant could have performed"

during the period of July 15, 2005 through July 23, 2007. *Id.* at 17.

The ALJ then concluded that on and after July 24, 2007, the very day after Dr. Thomas examined Plaintiff, he experienced medical improvement that rendered him no longer disabled and allowed him to perform "a significant number of jobs in the national economy." *Id.* at 22. The primary basis for this finding of "medical improvement" was the examination of Dr. Thomas the day before, the very examination that provided support for the conclusion that Plaintiff was disabled through the day of the examination, July 23, 2007. It is notable that Dr. Thomas never again examined Plaintiff, and the record is wholly absent of evidence of any substantial medical change in condition that occurred on July 24, 2007 that would support such a dramatic alteration in the Plaintiff's disability status.

As additional support for his finding that Plaintiff suddenly ceased to be disabled on July 24, 2007, the ALJ noted that there was "little evidence of treatment" received by Plaintiff for his spinal pathology after the examination of Dr. Thomas on July 23, 2007. R. at 21. He concluded that Plaintiff's "infrequent contact with physicians" caused him to conclude that on and after July 24, 2007, Plaintiff's testimony was "less than credible". *Id.* However, the ALJ also found that Plaintiff's statements regarding the "limiting effects of his symptoms are generally credible" for the period from July 15, 2005 through July 23, 2007. R. at 16.

Plaintiff asserts that his treating physicians for his orthopedic condition were in New Jersey and he had no health insurance following his move to South Carolina and was not able to afford treatment. (Dkt. No. 27 at 2). It is well settled that a Social Security claimant "may not be penalized for failing to seek treatment [he] cannot afford . . . ." *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986). Indeed, "[i]t flies in the fact of the patent purposes of the Social

Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him." *Gordon,* 725 F.2d at 237.

The ALJ also referenced scattered visits by Plaintiff to a free medical clinic and to an emergency room after July 24, 2007 to support the finding that Plaintiff was not disabled during this period. None of these visits involved a full neurological evaluation and were directed at other conditions, such as a suspected heart attack and the flu. *See,* R. 430, 434, 447, 451-53. It is interesting, however, that in the course of a June 23, 2008 emergency room visit for a possible heart attack it was noted that he "fairly frequently" experienced "left sided neck, arm, [and] head weakness . . .", symptoms which are consistent with ongoing spinal abnormalities. R. 452.

Finally, the ALJ gave "some weight" to a July 20, 2009 evaluation by a consultant, Dr. Lary Korn, D.O., who diagnosed Plaintiff with "degenerative disc disease" and "mechanical low back pain". R. 21, 488-92. Dr. Korn indicated that the claimant's obesity "most likely" contributed to his limited mobility but "I cannot rule out a progression of his spondylosis of the lumbosacral spine . . . ." Dr. Korn recommended a follow up MRI of the cervical spine and a nerve conduction study, which he believed "would obviously be invaluable in his disability determination . . . ." R. 491. No such studies were subsequently performed. Notably, Dr. Korn made no finding that Plaintiff was no longer disabled on and after July 24, 2007.

Further, the ALJ failed to address and weigh in any substantive way the opinions of two other evaluating physicians, Dr. Morris Horwitz and Dr. Ana Komotar. R. 479-482, 483-85. Both physicians addressed in considerable detail the nature and extent of Plaintiff's spinal

abnormalities.[1] The Commissioner clearly has the duty to weigh and address evidence from all medical sources. 20 C.F.R. § 404.1545(a)(3). This was hardly an immaterial or harmless oversight. Subsequent to the ALJ's adverse decision in this matter, Plaintiff filed a new claim for disability with the Commissioner. He was awarded full disability benefits for the period on and after February 6, 2010. The ALJ in the subsequent disability application extensively referenced the report of Dr. Horwitz and also mentioned the report of Dr. Komotar (Dkt. No. 27-2 at 10-15), both of which were part of the record in this application and were mentioned only in passing by the ALJ below. R. 19, 21.

The Court concludes that the ALJ's finding that Plaintiff ceased being disabled on and after July 24, 2007 is not supported by substantial evidence. As the Magistrate Judge indicated in her excellent Report and Recommendation, it is very odd that the ALJ used the report of the consulting examining physician, Dr. Thomas, to confirm the presence of disability through the date of his examination, but then used the very same report to support the conclusion that the following day and thereafter Plaintiff was not disabled. (Dkt. No. 29 at 6-11). The Court further concludes that the Commissioner erred in not addressing and weighing the opinions of Drs. Horwitz and Komotar regarding the nature and degree of Plaintiff's disability. Perhaps if the Commissioner addresses and weighs all medical opinions, as mandated by § 404.1545(a)(3), this will resolve the seeming incongruity in the ALJ opinion of February 5, 2010, at issue here, and the ALJ opinion of May 25, 2011, both of which appear to rely on primarily the same medical evidence and the same medical condition.

---

[1] Dr. Horwitz concluded that Plaintiff had an "orthopaedic disability" of 65%, and Dr. Komotar concluded he had a "permanent neurological disability" of 45%. R. 482, 485.

## Conclusion

Based on the foregoing, the Court hereby **REVERSES** the decision of the Commissioner, pursuant to Sentence Four of 42 U.S.C. § 405(g), and **REMANDS** the case for further action consistent with this Order.

_____
Richard Mark Gergel
United States District Judge

Charleston, South Carolina
January 25, 2012